Filed 7/27/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEANNE HOLLINGSWORTH et al., Plaintiffs and Appellants, v. HEAVY TRANSPORT, INC. et al., Defendants and Respondents. | B306127 (Los Angeles County Super. Ct. No. BC690999) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Murray & Associates, Lawrence D. Murray for Plaintiffs and Appellants.

Gray•Duffy, John Duffy, Michelle MacDonald; Black, Compean & Hall, Frederick G. Hall for Defendants and Respondents.

## INTRODUCTION

In June 2016, Kirk Hollingsworth (Hollingsworth) was involved in a fatal accident while working for defendant Heavy Transport, Inc. (HT). Hollingsworth's wife and son, plaintiffs Leanne and Mark Hollingsworth, filed a wrongful death complaint in superior court against HT and Bragg Investment Company, Inc. (Bragg) (collectively, Bragg/HT; the parties dispute whether the defendants are separate companies). Plaintiffs alleged that HT lacked the required workers' compensation insurance at the time of the incident, and therefore plaintiffs were entitled to sue Bragg/HT under Labor Code section 3706, which states, "If any employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages . . . ." Bragg/HT then filed an application for adjudication of claim with the Workers' Compensation Appeals Board (WCAB). Only one of these tribunals could have exclusive jurisdiction over plaintiffs' claims, and in our previous opinion, *Hollingsworth v. Superior Court* (2019) 37 Cal.App.5th 927 (*Hollingsworth I*), we held that the superior court, which had exercised jurisdiction first, should resolve the questions that would determine which tribunal had exclusive jurisdiction over plaintiffs' claims.

Following remand, plaintiffs asserted they were entitled to a jury trial on the factual issues that would determine jurisdiction. The superior court denied plaintiffs' request and held a hearing in which it received evidence and heard testimony regarding HT's insurance status. The superior court determined that HT was insured by a workers' compensation policy at the time of Hollingsworth's death, and therefore the WCAB had

2

exclusive jurisdiction over the matter. The court entered a judgment terminating proceedings in the superior court, and plaintiffs appealed.

Plaintiffs assert that they were entitled to a jury trial on the fact issues that would determine jurisdiction. We disagree. Although a jury may determine questions relevant to workers' compensation exclusivity when the issue is raised as an affirmative defense to common law claims, jurisdiction under Labor Code section 3706 is an issue of law for the court to decide. Plaintiffs also contend that the superior court erred in considering parol evidence in interpreting the workers' compensation insurance policy at issue. We find that the court's consideration of parol evidence was not erroneous, and that substantial evidence supports the court's findings. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Background facts and previous appellate opinion**

On June 20, 2016, a Bragg/HT tractor-trailer was hauling a large Bragg crane that had been used to hoist blades onto electric-generating windmills in the Stockton area. Two tires on the trailer failed, and Hollingsworth, who worked in maintenance for HT, was called to the location to change the tires. After the tires were changed and the tractor-trailer began traveling again, a third tire failed. The rubber treads of the tire came loose and wrapped around the axle of the trailer. Hollingsworth was again called to the scene for repair. As Hollingsworth and the truck driver attempted to free the rubber treads from the axle, Hollingsworth was crushed, causing his death.

"As a general rule, an employee who sustains an industrial injury 'arising out of and in the course of the employment' is

3

limited to recovery under the workers' compensation system."
(*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995,
1001; see also Lab. Code, § 3600.)  Private employers must either
carry workers' compensation insurance or be self-insured.  (Lab.
Code, § 3700, subds. (a), (b).)  The WCAB has exclusive
jurisdiction over claims for workers' compensation benefits. (*La
Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*
(1994) 9 Cal.4th 27, 35.)  If an employer fails to carry the
appropriate insurance, however, "any injured employee or his
dependents may bring an action at law against such employer for
damages" in superior court.  (Lab. Code, § 3706.)  "If at the time
of the accident there was no work[ers'] compensation coverage,
then the [WCAB] is without jurisdiction to grant relief, and if
there was such coverage then the superior court is without
jurisdiction and must leave the parties to pursue their remedies
before the [WCAB]."  (*Scott v. Industrial Acc. Commission* (1956)
46 Cal.2d 76, 83 (*Scott*).)

Plaintiffs filed a wrongful death complaint in superior court
on January 22, 2018, alleging that Hollingsworth was in the
course of his employment with HT at the time of his death, and
that HT did not have workers' compensation insurance.
Plaintiffs alleged that although Bragg purported to  merge HT
"out of existence and into" Bragg in 1986, the two companies
maintained separate operations, and HT continued to operate as
a separate corporation.  Plaintiffs alleged that Bragg paid them
workers' compensation benefits, "evidencing the lack of Worker's
Compensation Insurance for Kirk Hollingsworth as the
employee" of HT.  Plaintiffs further alleged that the Bragg and
HT equipment involved in the incident was in a dangerous
condition, and that Bragg and HT failed to adequately train their

4

workers, leading to Hollingsworth's death.  Plaintiffs included a demand for jury trial with their complaint.

Bragg/HT demurred to plaintiffs' complaint.  It admitted that Hollingsworth was working for HT at the time of his death.  But it asserted that HT was "a fictitious business name of defendant Bragg Investment Company, Inc.," so the companies were in fact "the same company."  Bragg/HT contended that "Bragg Investment Company, Inc. d/b/a Heavy Transport, Inc." had an active workers' compensation policy that covered the incident, so "plaintiffs' lawsuit is barred in its entirety by the Exclusive Remedy Rule of the Workers' Compensation System pursuant to Labor Code Sections 3601 and 3602."

As stated in our previous decision, the trial court overruled the demurrer, finding that plaintiffs had adequately alleged an exception to workers' compensation exclusivity by asserting that HT did not have workers' compensation insurance. (*Hollingsworth I, supra*, 37 Cal.App.5th at p. 931.)  The WCAB then determined that the accident had occurred in the course of employment, and set a hearing to determine if any workers' compensation insurance covered the incident.  (*Ibid.*)  The parties acknowledged that resolution of the insurance issue would determine which tribunal had exclusive jurisdiction, and in a series of motions and requests, Bragg/HT sought to stay proceedings in the superior court until the WCAB made that finding, while plaintiffs sought to stay the WCAB proceedings until the superior court made that finding.  (*Id*. at pp. 931-932.)  The superior court stayed all proceedings to allow the WCAB to decide, and plaintiffs filed a petition for writ of mandate in this court.  (*Id*. at p. 933.)  Following *Scott, supra,* 46 Cal.2d 76, we held that the superior court, which had exercised jurisdiction

5

first, "should make the necessary findings to determine which tribunal has exclusive jurisdiction over the remainder of the matter." (*Hollingsworth I, supra*, 37 Cal.App.5th at p. 933.) We remanded the case with instructions to the superior court to "conduct further proceedings limited to determining which tribunal has exclusive jurisdiction over plaintiffs' claims." (*Id*. at p. 937.)

## B.    Plaintiffs' request for a jury trial

Following remand, the superior court requested that the parties submit briefs asserting their positions on jurisdiction. Bragg/HT argued that jurisdiction was an issue of law for the court to determine. It stated that a workers' compensation policy had been issued to Bragg by insurer XL Insurance America, Inc. (XL Insurance), and HT was insured under the policy. Bragg/HT submitted declarations and the insurance policy in support of its contentions. It argued that because it carried workers' compensation insurance at the time of Hollingsworth's death, the exception to workers' compensation exclusivity did not apply, and jurisdiction in the WCAB was appropriate.

Plaintiffs agreed that "[e]xclusive jurisdiction rests on the presence or absence of the injured worker's employer carrying Worker's Compensation Insurance for the injured employee at the time and location of the injury." They argued that this question must be answered by a jury. Plaintiffs also contended that the insurance policy covering Bragg did not include "(a) Heavy Transport Inc[.], a California Corporation, [or] (b) any company named Heavy Transport Inc[.], at a California location." Plaintiffs further asserted that there had been no "merger" of Bragg and HT under California law, and whether the companies were separate "should be part of the jury's verdict."

6

At a hearing on November 22, 2019 before Judge Mark C. Kim, the superior court noted that the *Hollingsworth I* opinion remanded the case "to have a hearing and then make a determination as to whether or not this court has the jurisdiction or W.C.A.B. has the jurisdiction." The court said the "one thing [at] issue" was "whether or not defendants had workers' compensation coverage for the plaintiff," and "[i]f they did have coverage, then . . . it goes to workers' comp, W.C.A.B.; if there is no workers' comp insurance coverage for that plaintiff, then it stays with this court."

Plaintiffs' counsel agreed with the court's assessment, and added, "But the decision-maker on that is the jury." Plaintiffs' counsel argued that the jurisdictional determination rested on disputed fact issues, and plaintiffs had a right to have fact issues decided by a jury. Counsel for Bragg/HT asserted that jurisdiction was a legal issue for the court to decide.

The court held that plaintiffs were not entitled to a jury trial on the jurisdiction question. The court noted that the parties had submitted evidence in support of their positions, but "my preference is to have live testimony, have witnesses come in and testify." The court set a "non-jury trial" for February 14, 2020.

Plaintiffs then filed a peremptory challenge to Judge Kim under Code of Civil Procedure section 170.6, and the case was reassigned to Judge Michael Vicencia. Plaintiffs filed an ex parte application seeking an "order restoring right to a jury trial on all claims." They argued that Judge Kim "mistakenly decided" that *Hollingsworth I* required that a bench trial determine the jurisdiction issue. Plaintiffs asserted that the "case was set for Court Trial in error as plaintiffs have never waived their right to

7

a jury trial." They further contended, "Any efforts at a court trial on any contested issue of fact, such as the identify [*sic*] of the employer and the presence of Worker's Compensation for that employer would likely result in a judgment void at the start."

At the ex parte hearing on December 10, 2019, Judge Vicencia questioned whether he could disturb the decision of Judge Kim, and asked plaintiffs' counsel, "Are you saying that Judge Kim was wrong?" Plaintiffs' counsel responded, "I'm saying that Judge Kim said it will be decided by the court. It didn't say by a judge. Juries are part of the court." Bragg/HT's counsel stated that the issue already had been decided by Judge Kim. The court noted that juries sometimes decide issues of workers' compensation exclusivity, and stated that it appeared that "[i]f we call it jurisdiction, then the judge decides. If we call it an affirmative defense, then the jury decides." Bragg/HT's counsel responded, "But the appellate court said it's a jurisdictional issue."

The court also observed, "Requiring an affirmative defense to be tried to a jury prior to plaintiff making their prima facie showing strikes me as wrong on every level." Plaintiffs' counsel said that was not what he was advocating; rather, "Plaintiff puts on the negligence case, and plaintiff puts on the lack of comp and the lack of merger and puts all that in their case in chief." The court said that in that case, the trial would not be limited to jurisdiction, but "you're talking about getting a trial date for the whole shebang, and they can put this on as their affirmative defense, right?" Plaintiffs' counsel replied, "Exactly." The court noted that *Hollingsworth I* said "I have to limit it to the issue of jurisdiction."

8

The court denied plaintiffs' ex parte request. The court stated, "I know that the date was set and it was called a nonjury trial, but really, it is . . . an evidentiary hearing to determine jurisdiction." The court said it would keep the date set for the hearing and allow witnesses to testify in person, but invited the parties to "provide me as much as you can by way of brief. To the extent that you can agree that declarations are sufficient, great." The court set a briefing schedule with plaintiffs filing first, because they had the burden of proof.

## C.   Jurisdiction hearing

The parties set out their positions in documents titled "trial briefs." Plaintiffs asserted in their brief that Hollingsworth was within the scope of his employment with HT at the time of his death on June 20, 2016, and "[t]he main dispute here relates to the contention that HT did not have Workers Compensation Insurance at the time of his death." They contended that Hollingsworth's paychecks, other work documents, uniforms, and a collective bargaining agreement stated that HT was his employer. The ownership documents for the maintenance truck Hollingsworth drove and the tractor involved in the incident listed HT as the owner; the trailer was registered to Bragg. The relevant licenses and permits for the trip were in the name of HT. Plaintiffs asserted that in the Occupational Safety and Health Administration (OSHA) investigation following the incident, HT "informed the OSHA board . . . that HT was the true employer and that BRAGG had nothing to do with the circumstances leading to Hollingsworth's death."

Plaintiffs asserted that HT "did not have in place a policy of Worker's Compensation Insurance in its name. Hence, this civil suit under Labor Code Section 3706. The insurance policy in

9

effect named an HT company in Oregon, but did not list nor indicate coverage for any HT entity in California . . . ." Plaintiffs asserted that HT and Bragg were not the same entity. They further stated that checks for workers' compensation benefits paid to plaintiffs were in the name of Bragg, not HT. Plaintiffs also contended that Bragg's equipment involved in the incident was defective, in that the tires on the trailer "were not capable of carrying the weight of this 20 ton trailer with an 80 ton crane on it." No evidence was cited in plaintiffs' brief.

Bragg/HT asserted in its trial brief that HT "is a DBA" of Bragg, and at the time of the incident, "both Bragg Investment Company and Heavy Transport were named insureds of a workers compensation insurance policy issued by XL Insurance America." It stated that HT began as a California corporation in 1955 but "merged into" Bragg in November 1986; Bragg/HT attached the fictitious business name statement filed for HT. Bragg/HT described its application for workers' compensation insurance and attached the package submitted, which included a schedule of named insureds. Bragg/HT stated that in the policy active at the time of the incident, "[t]he applicant is Bragg Investment Company Inc[.], but Heavy Transport is specifically identified in the assigned risk section." Bragg/HT submitted a declaration by Thomas Poskus, a senior claims specialist with "AXA XL," the workers' compensation carrier for HT. Poskus stated that in May 2016, XL Insurance issued a workers' compensation coverage policy to Bragg, and at the time of the incident, HT was a named insured under the policy. Poskus stated that XL Insurance "accepted coverage" for plaintiffs' claim and paid benefits to plaintiffs starting in July 2016.

10

Bragg/HT also submitted the declaration of Gregory Stone, a licensed insurance broker, whose company has "worked with the various Bragg entities and dbas and divisions for decades." In May 2016, Stone's company "placed Workers' Compensation insurance coverage for our client Bragg Investment Company, Inc. with XL Insurance America, Inc." Stone stated, "In the case of Heavy Transport, the underwriters at XL America were provided with a standard ACORD application which contained the company's payroll by classification, a loss history and a Description of Operation Form. The underwriters used this information to calculate a rating and determine the premiums which contain a component specific to Heavy Transport." Stone stated that XL Insurance paid benefits on the Hollingsworth claim under the policy, and "[t]here has never been a coverage dispute regarding this claim." The president of Bragg/HT, M. Scott Bragg, stated in a declaration that Hollingsworth was employed by HT, HT's information was included in the application for insurance, and at the time of the incident HT was insured by XL Insurance. The general manager of HT, Robert Weyers, stated in a declaration that HT was insured under the XL Insurance policy at the time of the incident. A declaration by a claims representative from a third-party administrator stated that HT was a named insured under the XL Insurance policy, benefits had been paid to Leanne Hollingsworth on the claim, and benefits payments were ongoing.

Noting that one portion of the XL Insurance policy listed Heavy Transport with an Oregon address, Bragg/HT asserted that "Heavy Transport is not a company in Oregon—which was clearly a typo in the named insureds section of the certified

11

policy." The Oregon address was for another Bragg company, the "Bragg Cattle Ranch."

However, Bragg/HT asserted that the intended insured was made clear by information included in the application for workers' compensation insurance. HT's Stockton work yard was identified as one of the premises in the application, and HT's business was described in the application's schedule of operations. Bragg/HT also noted that the Stockton work yard—where Hollingsworth worked—had a large sign with both Bragg and HT names on it, the pickup truck that Hollingsworth drove had the Bragg "B" logo on it, and Bragg issued Hollingsworth's W-2 forms.

Bragg/HT also asserted that because HT was a dba of Bragg, it had an "automatic insured" status under the XL Insurance policy, and it was not required to be separately listed, even though it was. Because HT had workers' compensation insurance, Bragg/HT asserted that plaintiffs could not meet their burden of showing the exception to workers' compensation exclusivity. It further argued that plaintiffs could not sue Bragg for defective equipment because it was not a separate entity from Hollingsworth's employer. Bragg/HT argued that the action should be dismissed for lack of jurisdiction, and that the WCAB action should proceed.

In their reply brief, plaintiffs asserted there was no dispute that HT employed Hollingsworth. However, they asserted that HT did not have its own workers' compensation insurance, and "[p]arent corporations, subsidiary corporations and sister corporations cannot piggyback to avoid liability by claiming a 'doing business' status." They asserted that Bragg and HT maintained separate operations, and that as a subsidiary, HT

12

was required to carry its own insurance.  Plaintiffs argued that Bragg paid benefits "for its own potential liability," but no benefits had been paid in HT's name.

At the hearing on February 14, 2020, plaintiffs called as an expert witness Scott Thomas, an attorney specializing in "[i]nsurance coverage and litigation."  Thomas stated that he had never worked for an insurance company, but as an attorney he had represented insurance companies and "policy holders of various kinds" in insurance coverage disputes.  Thomas testified that workers' compensation insurance constituted "a very small percentage of the matters that I have been involved with in my career," but he could nevertheless "recognize and understand how a workers' compensation insurance policy is structured."

Thomas stated that he reviewed the information page of the relevant policy, which "is sort of the index for the policy" and includes "the policy's definition of who is insured."  Thomas concluded that "Heavy Transport, Inc., Mr. Hollingsworth's employer, is not an insured entity under this policy," because the information page of the policy did not include HT.  He also noted that in the "schedule of named insureds," a company called Heavy Transport, Inc. was listed, but its location was stated to be in Imnaha, Oregon.  There was nothing in the policy stating that a Heavy Transport, Inc. in Stockton, California was insured.

The court asked Thomas, "If the insurer and the insured agreed that it was their intention that the insured be an insured, isn't that the end of the query?  Would you . . . take the position that there is no coverage when the insured and the insurer agree there is coverage?"  Thomas said that under circumstances in which there was an "insurance policy, a contract" that "does not identify party A as an insured, then I would say they're not

13

insured." The court asked if, where the parties agreed that their "intention from the beginning was for us to insure them and for them to be an insured," even if the policy said something different, would Thomas "take the position that no, they are not insured? Isn't that an absurd position?" The court continued, "Doesn't the intent of the parties to a contract control? A writing is just evidence of what they intended." Thomas responded that the intent, compared to the writing, does not control "in every instance."

Plaintiffs' counsel asked Thomas how parties might reform a contract if they realized there was a mistake in the written terms, but the court barred this line of inquiry, stating, "This is not a reformation case." The court stated that the focus should be on the parties' intent, and "somehow you've hired an attorney to, essentially, tell me that under the law, you should win." The court asked plaintiffs' counsel to "move on to something else." Thomas testified that he was not aware that the parties had made any corrections to the endorsement.

On cross-examination, Thomas agreed that the policy included a notation that it applied under the workers' compensation laws of California and Oregon. Bragg/HT's counsel asked if it applied to any work site in either state. Thomas replied that he did not know, because that would be a "function of what the insurance policy says." Bragg/HT's counsel pointed to the extension of the information page of the policy, which included a list of classification codes including code 7219 for "trucking firms." Thomas testified, "I do not know where these codes in this policy came from." Thomas could not recall whether HT had been listed in the application for workers' compensation insurance, or whether HT had been assigned code 7219. Thomas

14

did not know whether the "premium basis" listed on the information page reflected HT's payroll. Bragg/HT's counsel began to ask about other issues in the policy, but the court suggested it was not necessary. Bragg/HT's counsel said he had no more questions. The court stated, "I will say now, his opinion is of little import to the court."

Plaintiffs' counsel called Leanne Hollingsworth to testify. She testified that Hollingsworth's paychecks came from HT, and she was not aware of anything suggesting that Bragg was Hollingsworth's employer. Hollingsworth's work truck and uniforms also said Heavy Transport. Plaintiffs' counsel also called Mark Hollingsworth as a witness, but when the court determined that his testimony would be similar to his mother's, the court said the testimony was unnecessary. Plaintiffs had no further witnesses.

Bragg/HT called Gregory Stone, the licensed insurance broker retained by Bragg to obtain workers' compensation insurance in 2016. In February 2016, Stone participated in a Workers' Compensation Insurance Rating Bureau (WCIRB) audit of the Bragg companies, along with David Benjamin, who worked for WCIRB. Stone and Benjamin toured the Bragg facilities in Long Beach, as well as the HT facility. WCIRB assigned a classification code to HT: 7219 for trucking firms. Stone included this information in his application to XL Insurance for workers' compensation insurance for Bragg in March 2016. A "description of operations" was submitted with the application, which is intended to "help the underwriters understand the . . . scope of operations of each one of the entities involved." The entities listed in the document were "divisions of one of the named insureds." HT was one of the divisions listed, and the description

stated that it is "[a] division of Bragg Investment Company; specializes in over-sized multi-dimensional and large capacity (from 1 ton to 400 tons) cargo providing a full-service approach to your individualized transportation needs." Stone explained that "the Bragg companies do business as Heavy Transport. And so, we describe, as a business, what Heavy Transport does, because they have their own units with the decals on the side."

The insurance application also included a "site location coding" section, which Stone explained was relevant to "how we allocate claims – cost and claims themselves." HT was included in this section, both at its Long Beach address and its Stockton address. In addition, the insurance application package included payroll projections, which Stone explained were the "basis of premium in a workers' compensation policy." Smith stated that HT's payroll was included in the payroll projections. In the policy itself, HT's payroll projection—around $7.9 million—was included on the information page next to "trucking firms" with the classification code 7219. Smith stated that the payroll is used to "calculate the premium for that specific classification." Smith testified that the policy's schedule of named insureds also included HT, but the notation that HT was located in Oregon was a "clerical error" made by XL Insurance in writing the policy.

On cross-examination, plaintiffs' counsel asked Stone about exhibit 15, a letter to plaintiffs' counsel from WCIRB, which stated that in response to an inquiry by plaintiffs' counsel, "no results were found" regarding workers' compensation insurance for HT. The letter stated that "the coverage information requested either does not exist or that coverage information could not be found based on the information provided to us." Plaintiffs' counsel asked Stone if exhibit 15 indicated that WCIRB "does not

16

recognize Heavy Transport as having workman's [*sic*] comp insurance in the year 2016." Stone replied, "No." Plaintiffs' counsel asked Stone whether the various Bragg companies had "Bragg as the parent company." Stone replied, "Yes. That's what makes them a named insured." Stone also stated that he was "not, so much, concerned about a dba being included as a named insured. Because technically, they don't have to, because they're a dba of the corporation." Stone testified that he was not familiar with who held the title on HT's equipment.

The court then asked Stone questions. The court clarified that Stone was a broker, and asked, "And as a broker, you don't work, necessarily, for the insured or the insurer, correct?" Stone agreed. The court also asked about the $7.9 million payroll projection, which included the Long Beach and Stockton locations, and asked Stone, "[D]o you go over those records in order to compile the information for the application?" Stone said he did, "[w]ith the named insured," specifically the chief financial officer, Dennis Ferguson. Stone also stated that "XL" was the insurer at the time of the incident, and it paid the claim. On re-cross, plaintiffs' counsel established that Stone did not know whether Hollingsworth individually was included in the HT payroll projections, but Stone stated that if "Mr. Hollingsworth was an employee at the time of the payroll projection, his payroll would have been included."

Bragg/HT offered to call underwriter Rafi Astorian as a witness, but the court stated, "I think I've heard enough with respect to the policy." Bragg/HT offered additional witnesses "who handled" the insurance policy, but the court said they were not necessary, stating, "I apologize, but clearly, Heavy Transport was insured," and added, "I think there's no question about it."

17

The court explained that the intent of the parties was important, and here, "clearly the intent was to cover Heavy Transport Long Beach and Heavy Transport Stockton, and they accepted coverage." The court stated that its "tentative ruling would be that the conditions of compensation exist with respect to Heavy Transport, and therefore workers' comp is the exclusive remedy with respect to Heavy Transport . . . ." The court stated that the "conditions of compensation do not exist with respect to Bragg Investments," which did not employ Hollingsworth, and "therefore workers' compensation would not be the exclusive right." The court invited the parties to present additional evidence or give their closing arguments.

Plaintiffs' counsel stated, "You disagree with our expert. Okay." The court interrupted, and stated, "And let me just say, your expert took an outrageous point of view at the outset. The notion that some writing might control over the express intention of the parties is found nowhere in law. It just isn't."

In his closing argument, plaintiffs' counsel asserted that the people "who write insurance policies for a living" are "very sophisticated people" who "don't want to make mistakes." Since the incident in 2016, however, "they still have not stepped up and said, we made a mistake. We want to change this. We want to show our true intention." Plaintiffs' counsel asserted that if "there truly was an interest in making sure the policy was accurate, to show their true intention, we would have seen that" before now. The court stated, "[Y]ou haven't explained to me why XL would accept this workers' comp claim, unless they could trace Mr. Hollingsworth back to some payroll upon which they based their premium." Plaintiff's counsel suggested that "they saw . . . the picture of that Bragg crane on the trailer . . . showing

18

that Bragg had the potential for exposure here." The court disagreed, stating that after the incident and claim, "they're going to say, wait a second, he worked for Heavy Transport. Was Heavy Transport's payroll part of the premium? Because if it wasn't, he's not covered." Plaintiffs' counsel responded, "We don't have any of that evidence." The court noted that the broker, Stone, said "that the $7.9 million . . . included the payroll of both Heavy Transport facilities." Plaintiffs' counsel pointed out that Stone could not say whether that included payroll for Hollingsworth specifically.

Plaintiff also asserted that HT operated as a separate legal entity in California, but only Bragg was listed on the benefits checks, and "we haven't seen anything that says, we have corrected our mistake to reflect our true intention. There's nothing in there that shows their true intention was anything other than that written policy that says, Heavy Transport, Oregon." Plaintiffs counsel asserted that plaintiffs had done two years' worth of investigation into whether HT was insured, and "nobody has stepped up and said, yeah, we meant to [insure HT]. Until now, until their civil liability is in issue, and suddenly they walk in the door and go, oh, that was a mistake. "

Plaintiffs' counsel further argued that the documents were "indisputable," and the parol evidence rule was based "on the notion that, if it's in writing, it has some real, serious consequences, and you don't just say, oh, we decided something different. [¶] And how easy would it be for an employer and their insurance company, which they get along quite well with, to say, we really wanted to do it a different way. We wanted to have that covered at HT." Plaintiffs' counsel added, "Where were they

19

in 2016 when this man was killed, and said, oh my god, you know, we didn't get it right. We need to get this right."

Before Bragg/HT could present a closing argument, the court stated, "Workers' compensation is the exclusive remedy." The court noted that "everyone agrees" HT was Hollingsworth's employer. The court then considered whether HT had "sufficient insurance, so that the conditions of compensation occur under the Labor Code," and said, "I conclude that it does." The court stated that plaintiffs' expert witness, Thomas, was not "particularly helpful," and Thomas's assertion that HT was not covered because of the Oregon address listed in the policy was "a nonsense opinion." The court stated that if it was "the intent of the insured and the intention of the insurer, to cover all of the HT facilities and its employees, then that coverage exists, and there is workers' compensation coverage for Heavy Transport." The court also noted that XL Insurance had accepted coverage and paid the claim, stating, "To me, that evidence makes it quite clear that it was the intention of Bragg Investments and Heavy Transport, Inc., on the one hand, and XL, the insurer, on the other, to include the Heavy Transport, Inc., operations in both Stockton and Long Beach as part of the insurance policy that was in place at the time" of the incident. The court then considered whether Hollingsworth was also an employee of Bragg at the time of the incident, and stated, "the answer to that question is clearly, no. He was not." The court instructed the parties to prepare a judgment.[1]

_____

[1]At the beginning of the hearing, the court asked Bragg/HT's counsel several questions attempting to clarify the ownership of the defendant companies, the merger of Bragg and

Plaintiffs timely appealed.[2]

## DISCUSSION

Plaintiffs assert two contentions on appeal: (1) the trial court deprived plaintiffs of a jury trial on the factual issue of insurance coverage, and (2) the court's decision violates the parol evidence rule and contradicts the insurance policy.[3] We consider plaintiffs' contentions below, following the "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that

---

HT, and the corporate structure. At the end of the hearing, the court held, over Bragg/HT's objection, that the case involving plaintiffs' claims against Bragg would continue in superior court. These issues are not relevant to this appeal.

[2] The court's judgment terminating proceedings in the superior court is appealable. (See *Furtado v. Schriefer* (1991) 228 Cal.App.3d 1608, 1613.) Bragg/HT filed a cross-appeal, which it later dismissed.

[3] Every appellant's opening brief is required to "[p]rovide a summary of the significant facts limited to matters in the record" (Cal. Rules of Court, rule 8.204(a)(2)(C)) and state each point of argument "under a separate heading or subheading summarizing the point." (*Id.*, rule 8.204(a)(1)(B).) Here, the 49-page "Introduction" section of plaintiffs' opening brief is peppered with legal contentions and commentary about the superior court's perceived errors. Legal arguments not included in the argument section of plaintiffs' opening brief under appropriate headings have been forfeited. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].)

21

justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

## A.     Plaintiffs did not have a right to a jury trial

Plaintiffs assert that the superior court committed reversible error by depriving them of a jury trial "on the factual issue of coverage." Bragg/HT asserts that jurisdiction is always a question for the court, not a jury, even if the court must make some factual findings in that determination. Whether a party was constitutionally entitled to a jury trial is a question of law that we review de novo. (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23.) We find that plaintiffs were not entitled to a jury trial on the issue of jurisdiction.

In *Hollingsworth I*, we issued a writ of mandate and remanded the case to allow the trial court to "conduct further proceedings limited to determining which tribunal has exclusive jurisdiction over plaintiffs' claims." (*Hollingsworth I, supra*, 37 Cal.App.5th at p. 937.) Plaintiffs have alleged that Hollingsworth was acting within the scope of his employment with HT at the time of the incident, but that they have a statutory right to bring a claim under Labor Code section 3706 based on HT's alleged lack of insurance. "Whether or not [an employer] carried the required work[ers'] compensation insurance is a question going to the jurisdiction of the superior court to entertain the action for wrongful death. . . . [J]urisdiction is a question of law and it is for the court and not for the jury to determine." (*Coleman v. Silverberg Plumbing Co.* (1968) 263 Cal.App.2d 74, 79-80 (*Coleman*).)

Plaintiffs assert that because exclusive jurisdiction relied on a disputed issue of fact—whether HT was insured—they were entitled to have a jury act as factfinder. They rely on cases in

22

which the plaintiffs asserted common law causes of action, but the parties disagreed as to whether the plaintiffs' claims fell within workers' compensation exclusivity. "As a general rule, an action brought under Labor Code section 3706 differs markedly from a common law negligence action" (*Valdez v. Himmelfarb* (2006) 144 Cal.App.4th 1261, 1269), because "in an action brought under Labor Code section 3706 an employer's liability is determined under rules of pleading and proof." (*Id*. at p. 1268.)

This distinction was discussed in *Coleman, supra,* 263 Cal.App.2d 74. In *Coleman*, the decedent's wife and child sued after their husband and father, Coleman, died while operating a backhoe at a construction site. The defendants included several companies that were involved in the construction project, including Silverberg. The plaintiffs alleged, in part, that they were entitled to sue under Labor Code section 3706 because Silverberg did not carry the appropriate workers' compensation insurance. (*Id*. at p. 77.) The court granted the defendants' motion for nonsuit, and the plaintiffs appealed. The Court of Appeal stated, "The theory of recovery for wrongful death of a presumptive employee (Coleman) caused by the presumptive negligence of Silverberg is based upon sections 3700, 3706 and 3708 of the Labor Code.[ ] Assuming arguendo that Coleman was Silverberg's employee, plaintiffs had to plead [citations] and prove that Silverberg violated section 3700 by not carrying the work[ers'] compensation required [citations]. We are not here concerned with common law causes of action, in which case it is incumbent on the defendant to plead and prove the employer-employee relationship and work[ers'] compensation insurance coverage. [Citation.] A complaint disclosing an employer-employee relationship in this action without negativing the

existence of work[ers'] compensation insurance would have been subject to a general demurrer." (*Coleman, supra,* 263 Cal.App.2d at p. 79.) *Coleman* stated, as quoted above, that "[w]hether or not Silverberg carried the required work[ers'] compensation insurance is a question going to the jurisdiction of the superior court," and "jurisdiction is a question of law and it is for the court and not for the jury to determine." (*Id.* at pp. 79-80.) The court held that the motion for nonsuit was properly granted on this basis. (*Id.* at p. 80.)

Plaintiffs rely on cases involving common law causes of action such as *Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606. There, the plaintiff employee sued the defendant employer and four employees "for assault and intentional infliction of emotional distress after the coemployees staged a mock robbery with Lee as the victim." (*Id.* at pp. 610-611.) The defendants asserted that the plaintiff's claims were barred by workers' compensation exclusivity under Labor Code section 3600. The case was presented to a jury in two phases: the first phase was intended to determine whether the plaintiff's claims were barred under workers' compensation exclusivity; if the claims were not barred, liability and damages would be determined in phase two. (*Id.* at p. 612.) Contested issues at trial and on appeal focused on whether plaintiff's claims satisfied the statutory conditions for workers' compensation exclusivity, including whether the plaintiff was acting within the course of her employment during the incident and whether the injury was proximately caused by the employment. (*Id.* at p. 624; see Lab. Code, § 3600, subd. (a).) The court ultimately held that the jury had been properly instructed on these issues and upheld the damages award to the

24

plaintiff.[4]  The exception to workers' compensation exclusivity in Labor Code section 3706 was not at issue in *Lee*.

Plaintiffs also rely on *Doney v. Tambouratgis* (1979) 23 Cal.3d 91 (*Doney*), in which the plaintiff alleged injuries resulting from assault and battery by the defendant.  The complaint did not allege an employment relationship, and the defendant did not assert workers' compensation exclusivity as an affirmative defense until the appeal.  The Supreme Court rejected the defendant's belated contention, stating, "The complaint . . . contained no allegation directly or indirectly indicating that an employment relationship existed between plaintiff and defendant or that the injuries which formed the basis of the action arose out of and in the course of employment.  In these circumstances it became the responsibility of defendant to plead and prove that the conditions of compensation rendering him subject to the protections of the [Workers' Compensation Act] existed.[ ]  This he did not do.[ ]  Accordingly he may not now raise the defense of coverage by the act." (*Id.* at pp. 97-98.) In a footnote, *Doney* noted the difference between common law-based claims and cases

_____

[4] Plaintiffs also cite *Ramey v. General Petroleum Corp.* (1959) 173 Cal.App.2d 386, without including a specific page citation, asserting that the court "reviewed a jury trial on predicate facts for application of compensation [*sic*] as a defense," and found that "[t]here was no question that the employer and the employee was [*sic*] entitled to a jury trial on the issue of coverage."  In fact, *Ramey* involved an appeal following a demurrer based on the statute of limitations.  The court did not consider or decide whether a party was entitled to a jury trial with respect to workers' compensation coverage.

25

under Labor Code section 3706, and cited *Coleman* with approval. (*Doney, supra*, 23 Cal.3d at p. 99, fn. 11.)

Plaintiffs also rely on *Scott, supra,* 46 Cal.2d 76, which we discussed in detail in *Hollingsworth I, supra*, 37 Cal.App.5th 927. In that case, a lawsuit by an injured employee was pending at the same time that a proceeding regarding the same incident was before the Industrial Accident Commission, a predecessor to the WCAB.  The Supreme Court stated that either the superior court or the commission would have exclusive—not concurrent— jurisdiction, "depending on whether or not the injuries were suffered within the course and scope of an employment relationship and so covered by the work[ers'] compensation laws." (*Scott, supra,* 46 Cal.2d at pp. 82-83.)  The court discussed the differences between concurrent and exclusive jurisdiction, and within that discussion noted, "Other practical problems, and differences between this situation and that of completely concurrent jurisdiction in two different tribunals are said to be these:  [¶] 1. In a jury trial of the superior court action, it appears that a special interrogatory on the question of coverage would (at least in the absence of special circumstances) be necessary in order to disclose what was determined on that point, in case of a verdict for defendant.  Without such a special interrogatory it could not be ascertained whether the verdict turned on one of the other pleaded defenses of absence of defendant's negligence, unavoidable accident, or contributory negligence of plaintiff, rather than on the issue of the employment relationship.  This, however it is answered, is a mere incident of procedure which can be handled in the trial court."  (*Id.* at p. 84.)

Plaintiffs cite this portion of *Scott* and argue, "According to the Supreme Court's *Scott* decision, it is a jury determination if

26

the injured worker's employer carried Worker's Compensation Insurance for the injured employee at the time and location of the injury and if that constitutes a defense." We disagree with this interpretation of *Scott*. When discussing the possibility of a special interrogatory to a jury, the court in *Scott* was discussing "practical problems" that may arise in certain cases. The court was *not* discussing whether a party has a right to a jury trial for the determination of jurisdictional issues. "'[A]n opinion is not authority for a proposition not therein considered.'" (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 118.)

Moreover, it is the general rule that "[i]n a civil case . . . personal and subject matter jurisdiction ordinarily are issues for the court, not the jury." (*People v. Betts* (2005) 34 Cal.4th 1039, 1049, fn. 2.) It is well established that whether a court has subject matter jurisdiction is a question of law. (See, e.g., *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774 ["Because the appeal is from a dismissal for lack of subject matter jurisdiction,[ ] a question of law, this court reviews the issue de novo"]; *Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 780 ["Questions of subject matter jurisdiction are questions of law, which are reviewed de novo"]; *Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1180 ["the issue of whether a court has subject matter jurisdiction over an action against an Indian tribe is a question of law subject to de novo review"]; *Lundahl v. Telford* (2004) 116 Cal.App.4th 305, 312 ["Whether California had sole subject matter jurisdiction over spousal support is a question of law that we review de novo"].) And "[a]n issue of law must be tried by the court." (Code Civ. Proc., § 591.) "When the right to

27

jury trial exists, it provides the right to have a jury try and determine *issues of fact*. (Code Civ. Proc., § 592; Evid. Code, § 312.) Even in such cases, *issues of law* are to be determined by the court, rather than a jury. (Code Civ. Proc., § 591; Evid. Code, § 310; see generally 7 Witkin, Cal. Procedure, supra, Trial, § 81, pp. 107-108 [citing cases].)" (*Shaw v. Superior Court* (2017) 2 Cal.5th 983, 993.)

Because plaintiffs asserted jurisdiction under Labor Code section 3706, it was appropriate for the court, not a jury, to determine the questions relevant to jurisdiction. Plaintiffs did not have a right to a jury trial on these facts. We therefore find no error in the court's denial of plaintiffs' request for a jury trial.

## B. The court properly considered parol evidence

Plaintiffs contend the superior court's "decision is contrary to the limitations in the policy and a violation of the parol evidence rule," and assert that "[t]he basis for the Judgment should be overturned as violating the Parol Evidence Rule." Bragg/HT asserts that the court correctly considered parol evidence, including the evidence presented by plaintiffs.

"[I]nterpretation of a contract is a judicial function." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125 (*Wolf*).) Contracts, including insurance policies, "are interpreted so as to give effect to the mutual intention of the parties at the time of contracting, to the extent ascertainable and lawful. [Citations.] The mutual intent of the parties is ascertained from the contract language, which controls if clear and explicit. [Citations.] Where necessary, a contract may be interpreted by reference to the circumstances under which it was made or the matter to which it relates. . . . Extrinsic or parol evidence may be used to explain ambiguity, context or related

28

matter.'" (*Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.*
(2010) 189 Cal.App.4th 101, 110-111.)

"Although the [parol evidence] rule results in the exclusion
of evidence, it 'is not a rule of evidence but is one of substantive
law.'" (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343
(*Casa Herrera*).)  The superior court's determination whether the
contractual language is ambiguous is a question of law subject to
independent review.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159,
1165.)  "When the competent parol evidence is in conflict, and
thus requires resolution of credibility issues, any reasonable
construction will be upheld as long as it is supported by
substantial evidence."  (*Id*. at p. 1166.)

Plaintiffs argue, "Where there is an integrated contract,
such as here, the Parol Evidence Rule prevents any attempt to
change the terms" of the contract.  They assert that the XL
Insurance policy covered only a Heavy Transport, Inc. in Oregon,
and based on the court's consideration of parol evidence, "the
terms [of the policy] as to the identity of HT Oregon [were]
changed to HT California."  Plaintiffs contend, "While the parties,
and the broker had every opportunity to seek a written
modification in the form of an endorsement for an additional
insured, they did not.  They never claimed they made a mistake.
[Record citation.]  Instead, they prevailed on the Trial Judge to
alter the terms for coverage in the insurance agreement to have it
apply to a different entity, a California corporation."  Bragg/HT
asserted below that its named insured *was* HT in California, and
only the Oregon address was erroneous.[5]  Bragg/HT contends on

---

[5] Plaintiffs assert that Bragg/HT's position is that because
Bragg as a parent company sought insurance or was insured, HT

29

appeal that in light of the competing constructions of the policy, the superior court properly considered parol evidence to determine the intent of the contracting parties.

We agree with Bragg/HT. The XL Insurance policy was ambiguous as to whether the named insured was the HT in California that employed Hollingsworth, or a different entity in Oregon. In light of the parties' competing interpretations of the contract, the court appropriately considered parol evidence to determine the meaning of the disputed terms. The parol evidence rule "does not . . . prohibit the introduction of extrinsic evidence 'to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible.'" (*Casa Herrera, supra,* 32 Cal.4th at p. 343; see also *Wolf, supra,* 162 Cal.App.4th at p. 1126 ["Extrinsic evidence is admissible . . . to interpret an agreement when a material term is ambiguous"].) "[T]he intention of the parties as expressed in the contract is the source of contractual rights and duties.[ ] A court must ascertain and give effect to this intention by determining what the parties meant by the words they used. Accordingly, the exclusion of relevant, extrinsic evidence to explain the meaning of a written instrument could be justified only if it were feasible to determine the meaning the parties gave to the words from the instrument alone." (*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 38.) Here, the intention of the parties was not clear from the words of

as Bragg's subsidiary was automatically also insured. This does not accurately reflect Bragg/HT's position. Rather, Bragg/HT contends that Bragg, "on behalf of itself and its divisions including Heavy Transport," obtained insurance that specifically included HT as a division of Bragg.

the XL Insurance policy alone.  In light of the differing interpretations of the policy, the superior court's consideration of parol evidence to determine the intent of the parties was not erroneous.

Substantial evidence showed that the parties intended HT in California to be a named insured, and that inclusion of the Oregon address was erroneous. Thomas Poskus of XL Insurance stated in his declaration that at the time of the incident, HT was a named insured under the policy.  It was undisputed that XL Insurance paid plaintiffs benefits under the policy, indicating that XL Insurance had determined the claim was covered. Broker Gregory Stone, who had worked with Bragg for years, testified that HT, its two California locations, and its WCIRB classification code as a trucking firm were included in the insurance application prepared for XL Insurance.  The application supported this testimony.  Stone further testified that HT's payroll projections informed the premium charged for the insurance.  "Trucking firms," the classification code, and HT's payroll projection were included on the policy's information page. Substantial evidence supports the court's conclusion that HT was insured under the XL Insurance policy at the time of Hollingsworth's death.

Plaintiffs argue in their reply brief that there was a "repeated assumption throughout [Bragg/HT's] brief . . . that since Bragg made an application for a Workers' Compensation Policy, just by submitting that application it would therefore cover Heavy Transport's operation in California."  This is not an accurate representation of Bragg/HT's position.  Rather, Bragg/HT asserts that the superior court properly considered that HT and HT's location were included in the insurance

31

application, HT's payroll informed the policy premium, HT was a named insured, XL Insurance did not dispute coverage, and XL Insurance paid benefits on the claim. We agree that the court properly considered these things to determine the intent of Bragg/HT and XL Insurance, and see no evidence in the record supporting plaintiffs' contention that Bragg/HT argued that a presumption of coverage arose based on the insurance application alone.

Plaintiffs also argue in their reply that benefit payments were made under Bragg's name, not HT's, and therefore HT "is not entitled to immunity." Plaintiffs cite *Hernandez v. Chavez Roofing, Inc.* (1991) 235 Cal.App.3d 1092, which held that even though the injured employee was covered by a "general contractor's workers' compensation insurance," the uninsured employer was not immune from liability under Labor Code section 3706. (*Id*. at p. 1095.) *Hernandez* is not applicable here, because HT was not an uninsured employer. Furthermore, the name on the benefit checks does not suggest that HT was uninsured. To the contrary, as the superior court noted, payment of the claim shows that XL Insurance found that the incident was covered by the policy.

Plaintiffs have not demonstrated that the court erred in considering parol evidence, or that the court "changed" the policy by interpreting it to mean that HT was insured. The court's conclusions were supported by substantial evidence. The court was therefore correct in finding that the WCAB has exclusive jurisdiction over plaintiffs' claims against HT and terminating the proceedings as to HT.

## DISPOSITION

The judgment is affirmed.  Bragg/HT is entitled to recover its costs on appeal.

## CERTIFIED FOR PUBLICATION


COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.